UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| ROBBIN R. WILSON, | § | |
| --- | --- | --- |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-CV-0593-B |
| | § | |
| REPUBLIC NATIONAL INDUSTRIES | § | |
| OF TEXAS, LP d/b/a REPUBLIC ELITE | § | |
| and ELITE MULTIFAMILY | § | |
| INTERIORS, LLC d/b/a REPUBLIC | § | |
| ELITE, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion to Dismiss (Doc. 12). For the following reasons, the Court **GRANTS** the Motion.

**I.**

**BACKGROUND**

This is a case involving claims under Title VII of the Civil Rights Act of 1964. Plaintiff Robbin R. Wilson brought her claims against her former employers Defendants Republic National Industries of Texas, LP d/b/a Republic Elite and Elite Multifamily Interiors, LLC d/b/a Republic Elite ("Defendants") on March 11, 2019. Doc. 1, Compl. Plaintiff was employed with Defendants as a Project Coordinator from December 2016 to June 2017. Doc. 10, Am. Compl., ¶¶ 8, 10. She alleges that not long after she began her employment, she was subject to sexually offensive conduct by coworkers and management, and that despite a verbal attempt to notify Defendants of the conduct through its employees, the conduct continued. *See id.* ¶¶ 10–15. She alleges that because of this

verbal report, she was retaliated against and was forced to resign her position. *Id.* ¶¶ 10, 15–21.

Specifically, Plaintiff asserts two federal causes of action: (1) Title VII sexually hostile work environment and (2) Title VII retaliation. *Id.* ¶¶ 31–36. She seeks reinstatement to her former job duties, as well as damages. *Id.* ¶ 37.

A.  *Factual Background*

Because Title VII claims are so fact-specific, the Court pauses to more fully explore the allegations. Plaintiff worked as a Project Coordinator for Defendants, a position which reported to the Project Managers. *Id.* ¶¶ 8–9. These Project Managers included John Hodge and Mike Winter, two people who Plaintiff alleges had input into decisions to discipline or terminate employees in her position. *Id.* ¶¶ 9–10. Plaintiff alleges that a few months after she began employment with Defendants, she was subjected to a sexually hostile work environment. *Id.* ¶ 10. Plaintiff specifically alleges three instances over a roughly three month period in which project managers directed sexually offensive conduct at her. *Id.* ¶¶ 11–13.

First, Plaintiff recalls an incident on March 17, 2017, in which she came to work without wearing makeup and Hodge asked her if it was "come to work ugly day." *Id.* ¶ 11. Plaintiff perceived this to be a comment insinuating that as a woman, she was required to wear makeup to work. *Id.* The second incident occurred on or about May 6, 2017, when Plaintiff alleges that Hodge insinuated that she was the "paid entertainment" at a company crawfish boil held the previous evening. *Id.* ¶ 12.

The final incident Plaintiff alleges occurred on or about June 6, 2017, three days before she resigned, Specifically, on or about June 6, 2017, Plaintiff claims that she overheard Hodge and another coworker remarking that "hoes" were going to be present at an event and that because of this, one or both of them could not attend. *Id.* ¶ 13. Hodge then told Plaintiff that she "[wasn't]

invited." *Id.* A few minutes after this, Winter told Plaintiff that she was beginning to get "honey hams," a term that Plaintiff claims is used within the office to describe people who are overweight. *Id.* Plaintiff alleges that this comment so upset her that she began crying at her desk, and that when the men who made the comments realized that she was upset, they asked her to come to lunch. *Id.* Plaintiff declined the offer, and in response, Plaintiff claims that Hodge said that since they were "walking the street, [she] should like that." *Id.* Plaintiff perceived this to be another remark referring to her as a prostitute. *Id.*

Shortly after the third incident, Plaintiff made a verbal report of the comments to another Project Coordinator, Sandra Gobert. *Id.* ¶ 15. In her verbal report, Plaintiff characterized the comments made by the Project Managers as sexual harassment and was so upset about them that she began crying. *Id.* Plaintiff claims that Gobert apologized for the Project Managers' comments and claimed that she would "handle it." *Id.* Plaintiff alleges that she did not go to anyone in upper management with her report at the time out of fear of retaliation. *Id.*

Plaintiff alleges that the day after making her verbal report, she arrived at work and discovered Jerry Thompson—the company's Vice President of Sales and Hodge's supervisor—whispering with others, which made her feel uncomfortable. *Id.* ¶ 16. Gobert then contacted Plaintiff to see if she had received an apology from Hodge for his previous comments, and Plaintiff responded that she had not. *Id.* ¶ 17. Gobert spoke further to her supervisor Thompson about Plaintiff's report, and Thompson went to Plaintiff's cubicle to tell her he was going to speak with Hodge. *Id.* ¶ 19. After this conversation, however, Plaintiff alleges that Thompson reprimanded her for leaving work and threatened consequences if it happened again, regardless of the circumstances. *Id.* Plaintiff perceived that Thompson was upset about her report and was trying to

intimidate her. *Id.*

The day after the conversation with Thompson, Hodge met with Plaintiff and apologized for his behavior, stating that it would stop if she was offended. *Id.* ¶ 20. Plaintiff claims that instead, she was subject to further retaliation and recalls one instance in which a coworker who was present for the incident on June 6, 2017, began mocking her by fake crying and claiming that he had "hurt feelings." *Id.* ¶ 21. Because of the open floor plan of the office, Plaintiff's other coworkers could hear these comments, which embarrassed her further. *Id.*

On June 9, 2017, Plaintiff met with another Project Manager, Jonathan Crawford, to inform him that she was resigning because of the comments made by the other Project Managers and the retaliatory behavior she experienced after reporting them. *Id.* ¶ 23. Plaintiff then went back to her desk and submitted a written report of the sexual harassment and her resignation. *Id.* Shortly after submitting her report, Plaintiff was called into Thompson's office and was asked to gather her belongings and leave. *Id.* ¶ 24. Thompson informed Plaintiff that the company's Vice President of Human Resources, A.J. Wesseler, would contact her further. *Id.* ¶ 25.

Wesseler contacted Plaintiff and asked her to come into the office to discuss her report and her resignation. *Id.* ¶ 26. When Plaintiff came into the office on June 13, 2017, Wesseler admitted that he was aware of the type of behavior Plaintiff had reported and stated that he was going to conduct an investigation with all parties. *Id.* ¶ 27. Wesseler stated to Plaintiff that he would contact her after his investigation, and that he would also conduct an exit interview with her. *Id.* ¶ 28. Plaintiff never heard back from Wesseler or any other representatives of the company about the status of the investigation, nor was any exit interview ever conducted. *Id.* ¶ 29. This suit ensued.

B.  *Procedural Background*

There has already been one motion to dismiss in this case (Doc. 6), to which Plaintiff responded with her Amended Complaint. Doc. 12, Am. Compl. Defendant responded to the Amended Complaint with a second Motion to Dismiss, arguing that the majority of Plaintiff's allegations remained unchanged and that her claims should be dismissed. Doc. 12, Def.'s Mot. to Dismiss. Plaintiff responded (Doc. 13) and Defendants replied (Doc. 17). As all briefing has been received, the Court considers the Motion.

## II.

## LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." *Id.* 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). "The court's review [under 12(b)(6)] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim *and* referenced by the complaint." *Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763 (5th Cir. 2019) (emphasis added) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citation omitted)).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (cleaned up).

In employment discrimination cases, "the ordinary rules for assessing the sufficiency of a complaint apply." *Sandifer v. Donahoe*, 2015 WL 5552644, at *4 (E.D. La. Sept. 16, 2015) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)). "[A]n employment discrimination plaintiff need not plead a prima facie case" in order to survive a Rule 12 motion. *Swierkiewicz,* 534 U.S. at 515 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'").

## III.

## ANALYSIS

*A.    Sexually Hostile Work Environment*

Title VII makes it an "unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex[.]" 42 U.S.C. § 2000e–2(a)(1). Sexual harassment claims arise from two principal theories: quid pro quo and hostile work environment. *Wyatt v. Hunt Plywood Co., Inc.*, 297 F.3d 405, 409 (5th Cir. 2002); *Harvey v. Chevron U.S.A., Inc.*, 961 F. Supp. 1017, 1029 (S.D. Tex. 1997). Plaintiff brings her claim on the latter theory: hostile work environment. Doc. 10, Am. Compl., ¶¶ 32–34.

To establish a claim for hostile work environment in general, Plaintiff must show: (1) she belongs to a protected group; (2) she was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment was sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment; and (5) the employer knew or should have known and failed to take prompt remedial action. *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999). When the alleged harasser is a supervisor with immediate or higher authority over the plaintiff, the plaintiff need only meet the first four elements of the test. *Id.*

"[D]etermining whether a hostile-work environment exists takes into account the totality of the circumstances, including such factors as: (1) the frequency of the conduct; (2) its severity; (3) the degree to which the conduct is physically threatening or humiliating; and (4) the degree to which the conduct unreasonably interferes with an employee's work performance." *Donaldson v. CDB Inc.*, 335 F. App'x 494, 501–02 (5th Cir. 2009) (citing *Septimus v. Univ. of Houston*, 399 F.3d 601, 611 (5th Cir. 2005)). This inquiry involves a subjective and objective component. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993). In addition to the plaintiff's subjective perception of the abusiveness of the environment, the environment must be such that a reasonable person would find it hostile or abusive. *Id.* That is, "this subjective perception must be objectively reasonable." *Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks and citations omitted).

Here, the Court finds that Plaintiff's allegations do not state a claim for hostile work environment. Plaintiff has failed to plausibly allege facts to establish severe or pervasive harassment.

Plaintiff specifically alleges only three distinct incidents over three months where comments were made to her that could have been directed at her gender; however, this does not support a finding of widespread and pervasive sexual harassment. Plaintiff cites to *Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803 (5th Cir. 1996) in support of the proposition that numerous inappropriate comments taken together are sufficient to create a sexually hostile work environment. Doc. 14, Pl.'s Resp. 12. But the plaintiff in *Farpella* alleged that her coworker had made inappropriate comments two to three times a week for nearly six months. *Farpella*, 97 F.3d at 806–07. In fact, the plaintiff in *Farpella* testified that "the comments were so frequent that she could not possibly remember each instance." *Id.* at 805. The alleged comments made by the Project Managers in this case—which were made in front of other employees and could reasonably be construed to have been related to Plaintiff's sex—were humiliating and inappropriate, if true. However, because of the isolated nature of the comments and the fact that there were only three separate instances alleged, Plaintiff's allegations fail to allege sufficiently severe or pervasive harassment as viewed from an objective standard to proceed. *See, e.g.*, *Malin v. Orleans Par. Commc'n Dist.*, 718 F. App'x 264, 273 (5th Cir. 2018) (upholding a 12(b)(6) dismissal because a reasonable person would not believe that a coworker describing her sex life six times was severe or pervasive enough to create an actionable hostile work environment claim).

Thus, the Court **GRANTS** Defendant's Motion to Dismiss Plaintiff's Title VII sexually hostile work environment claim.

B. *Retaliation*

To establish a prima facie case of retaliation, Plaintiff must show: (1) that she engaged in activity protected by Title VII; (2) that she suffered an adverse employment action; and (3) that a

causal connection exists between the protected activity and the adverse employment action. *See Webb v. Cardiothoracic Surgery Assoc. of N. Tex., P.A.*, 139 F.3d 532, 540 (5th Cir. 1998) (*abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)). At the pleading stage, a plaintiff may survive a Rule 12(b)(6) motion without pleading a prima facie case, however, courts can and do consider these elements at this stage. *E.g., Gallentine v. Hous. Auth. of City of Port Arthur, Tex.*, 919 F. Supp. 2d 787, 806–07 (E.D. Tex. 2013).

For the first element, an employee has engaged in protected activity if she has (1) "opposed any practice made an unlawful employment practice by this subchapter," or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427–28 (5th Cir. 2000) (quoting 42 U.S.C. § 2000e–3(a)). To satisfy the "opposition clause," a plaintiff need not prove that the employer's practices were actually unlawful, but only that he had "a reasonable belief that the employer was engaged in unlawful employment practices." *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1140 (5th Cir. Unit A Sept. 1981). But a showing of subjective good faith alone is insufficient. *Harvey*, 961 F. Supp. at 1032.

Here, Plaintiff relies on the opposition clause and cites her verbal and written report of harassment. She alleges that her verbal and written report of the three separate instances in which project managers made offensive comments qualifies as a protected activity for the purposes of a Title VII retaliation claim. Doc. 10, Am. Compl., ¶ 35. This relies on the Plaintiff's assumption that the conduct engaged in by the Project Managers was sexual harassment and thus was an unlawful employment practice. At this stage, the Court assumes that this is an objectively reasonable belief, especially given that Plaintiff is not an attorney and that in some instances sexually offensive

comments can give rise to a Title VII hostile-work-environment claim.

Although Plaintiff has met her burden at this stage as to this first element, the Court finds that Plaintiff has not pled enough facts to satisfy the second element—that she suffered an adverse employment action. An adverse employment action in the retaliation context is not limited to "ultimate employment decisions" like hiring, promoting, and compensating, but instead includes actions that "might dissuade a reasonable worker from making a charge of discrimination or sexual harassment." *Wesley v. Yellow Transp., Inc.*, 2008 WL 294526, at *15–16 (N.D. Tex. Feb. 4, 2008) (citations omitted) (describing the "material adverse standard" used in retaliation claims). In this case, Plaintiff alleges that the adverse employment action was constructive discharge—*i.e.* when Defendants made working conditions so intolerable that Plaintiff resigned in June 2017. *See* Doc. 10, Am. Compl., ¶ 32; *see also* Doc. 14, Pl.'s Resp., 17–18. To establish constructive discharge, a plaintiff must show the "working conditions were so intolerable that a reasonable employee would feel compelled to resign." *Lauderdale v. Tex. Dep't of Criminal Justice, Inst'l Div.*, 512 F.3d 157, 167 (5th Cir. 2007) (quoting *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001)). Whether an employee was constructively discharged depends on the following factors:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status].

*Donaldson*, 335 F. App'x at 501 (5th Cir. 2009) (quoting *Lauderdale*, 512 F.3d at 167).

While generally a plaintiff alleging retaliation need not show that a Title VII violation

actually occurred,[1] a plaintiff specifically alleging constructive discharge as the retaliatory action has a higher burden. The Fifth Circuit has stated that in general, claims of constructive discharge require the plaintiff to "demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile work environment." *Landgraf v. USI Film Prods.*, 968 F.2d 427, 430 (5th Cir. 1992). A number of Fifth Circuit opinions have followed this general rule and dismissed constructive-discharge claims upon a showing that recovery under a hostile-work-environment theory was not appropriate. *See e.g., Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 195 n.7 (5th Cir. 1996) ("Because [plaintiff] failed to present sufficient evidence to support her hostile work environment claim, her constructive discharge claim necessarily fails as well.").

Here, the only factor that the Plaintiff alleges played a part in her constructive discharge was badgering and harassment calculated to encourage her resignation. Doc. 10, Am. Compl., ¶¶ 18–21; Doc. 14, Pl.'s Resp., 18–19. Plaintiff alleges three instances of such badgering and harassment: the perceived whispering of her coworkers, Thompson's verbal reprimand the day after she made her report, and her unnamed coworker's teasing about "hurt feelings." *Id.* The Court does not find at this stage that a reasonable person in Plaintiff's position would have felt compelled to resign based on the few instances alleged. First, Plaintiff does not allege enough facts for the Court to determine that Thompson's verbal reprimand was directly in response to her report of harassment and not merely in response to her leaving early the previous day. Second, even assuming they were, while the teasing and mocking by the unnamed coworker was surely inappropriate, the Court is not convinced that

---

[1] *E.E.O.C. v. Rite Way Serv., Inc.*, 819 F.3d 235, 237 (5th Cir. 2016) ("It has long been the law in this . . . [circuit] that a plaintiff contending she was retaliated against for reporting employment discrimination need not show that the discrimination rose to the level of a Title VII violation").

it rises to the level of being so severe that a reasonable person would feel compelled to resign in a similar situation. Plaintiff does not allege any facts that would indicate this coworker was in a position to influence her employment, nor does Plaintiff allege that the mocking continued beyond the one instance alleged. And lastly, Plaintiff presents no allegations that she was demoted, had her pay reduced, was reassigned to more menial tasks, or any other allegations that could be weighed as a factor in considering an alleged constructive discharge claim.

Because the badgering and harassment that led to Plaintiff's resignation does not rise to the level of severity or pervasiveness that is required by the Fifth Circuit to establish a valid claim of constructive discharge, the Court finds that Plaintiff has failed to allege that she suffered an adverse employment action for the purposes of a Title VII retaliation claim. Thus, the Court **GRANTS** Defendant's Motion to Dismiss as to Plaintiff's Title VII retaliation claim.

C.      *Leave to Amend*

Courts routinely grant plaintiffs leave to amend their pleadings at least once. This has already happened in this case in response to the arguments Defendants made in their initial motion to dismiss. *See* Doc. 10, Am. Compl. Plaintiff's Amended Complaint was substantially similar to her Original Complaint, and there is no indication that further amendments would cure the defects identified herein. Nor has Plaintiff indicated in her Response that she could again amend her pleadings to allege additional facts to support her claims. Thus, the claims dismissed above are **DISMISSED with prejudice**. *See Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329–30 (5th Cir. 2002).

**IV.**

**CONCLUSION**

For the above-stated reasons, the Court **GRANTS** Defendants' Motion to Dismiss (Doc. 12). Because the Court finds that further amendment would be futile, the Court **DISMISSES with prejudice** Plaintiff's claims against Defendants for sexually hostile work environment and retaliation. Final judgment to follow.

SO **ORDERED.**

SIGNED: August 16, 2019.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE